RECEIVED
DEC - 3 2008
ROBERT H. SHEMWELL, CLERK
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE, LOUISIANA

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

LAFAYETTE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | CRIMINAL ACTION NO. 08-00205-01 |
| VERSUS | JUDGE DOHERTY |
| DARIUS NATHANIEL FISHER | MAGISTRATE JUDGE HILL |

## MEMORANDUM RULING

Currently pending before the Court is a "Motion for Revocation of Detention Order Pursuant to 18 USCS § 3145," filed by defendant, Darius N. Fisher. [Rec. Doc. 144] In the motion, defendant argues the Magistrate Judge's Order of Detention pending trial should be revoked, as "[t]he Government did not meet its burden by showing clear and convincing evidence that no condition or set of conditions would reasonably assure the safety of the community or any other person if the Defendant was released." [Id. at ¶ 7] Additionally, defendant argues the Magistrate Judge erred, because "after finding that the Defendant was not a flight risk, she found that he posed a danger to the community. There is little evidence of danger to the community in that Defendant did not commit a crime of violence, use of explosives or an act of terrorism." [Id. at ¶ 4]

In response, the Government argues:

The defense does not allege any facts [in this motion] that were not presented at the time of the detention hearing. There is no factual basis alleged by the defense that warrants a reconsideration of the detention ruling. . . .

The government offered during the detention hearing . . . sufficient proof not only to trigger the presumption contained in Section 3142(e), but also to support a finding by clear and convincing evidence that FISHER is a danger to the community.

[Rec. Doc. 183, p.4] Accordingly, the government argues the motion should be denied.

The Court has conducted a *de novo* review of this matter, including but not limited to a review of the transcript of the detention hearing, the Magistrate Judge's written detention order, the pre-trial services report, and the briefs submitted in support and in opposition to this motion.

## Background

Defendant Darius Nathaniel Fisher, a resident of Houston, Texas, was charged on September 9, 2008 in a forty-two count superceding indictment with various charges, including Conspiracy to Possess with Intent to Distribute Cocaine, Cocaine Base and Marijuana, 21 U.S.C. § 846, and a Continuing Criminal Enterprise, 21 U.S.C. § 848. Defendant had his Initial Appearance on September 9, 2008 before Magistrate Judge Mary Milloy of the Southern District of Texas. At that time, the government moved for pre-trial detention pursuant to 18 U.S.C. § 3142(f)(1)(C) ("an offense for which a maximum term of imprisonment of ten years or more is prescribed in the Controlled Substances Act ..."), as the defendant was charged with violations of Title 21,carrying a mandatory term of imprisonment of ten years to life. A detention hearing was held on September 11, 2008, and the defendant was ordered detained. A written detention order issued September 16, 2008. [See Rec. Docs. 137 and 154]

## Applicable Law

The Bail Reform Act of 1984, 18 U.S.C. § 3141, *et seq.*, delineates "the elaborate scheme" a court must follow when determining whether a person charged with a criminal offense is to be released or detained pending trial. 18 U.S.C. § 3142(a); U.S. v. Jackson, 845 F.2d 1262, 1264 (5th Cir. 1988).

> The Bail Reform Act directs the judicial officer to order pre-trial release on personal recognizance or upon the execution of an unsecured appearance bond unless the judicial officer determines that such release will not reasonably assure the appearance of the person as required or will endanger the safety of any other person

or the community.

U.S. v. Byrd, 969 F.2d 109 (5th Cir. 1992); *see also* 18 U.S.C. § 3142(a) and (b). If neither of the foregoing options will reasonably assure defendant's appearance, or will endanger the safety of any other person or the community, then the judicial officer is directed to order the pre-trial release of the person, subject to various conditions set forth in § 3142(c).[1] However, "if, after a hearing pursuant to § 3142(f), the judicial officer finds that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community," the judicial officer shall order pre-trial detention. Byrd at 109 (internal punctuation omitted)(citing § 3142(e)).[2]

Section 3142(f) ("Detention Hearing") provides, in pertinent part, as follows:

> **(f) Detention hearing.**--The judicial officer shall hold a hearing to determine whether any condition or combination of conditions set forth in subsection (c) of this section will reasonably assure the appearance of such person as required and the safety of any other person and the community[3]--
>
> > **(1)** upon motion of the attorney for the Government, in a case that involves--
> >
> > . . .
> >
> > **(C)** an offense for which a maximum term of imprisonment of ten years or more is prescribed in the Controlled Substances Act (21 U.S.C. 801 et seq.). . .

---

[1] The conditions available under § 3142(c) include options such as: defendant must remain in the custody of a designated person, defendant must avoid all contact with the alleged victim, defendant must return to custody for specified hours following release for employment, etc.

[2] "There can be no doubt that this Act "clearly favors nondetention." Byrd at 109.

[3] The jurisprudence holds, "The wording of the Act, particularly the first sentence of section 3142(e), makes it evident that the lack of reasonable assurance of *either* the defendant's appearance *or* the safety of others or the community is sufficient; both are not required." U.S. v. Fortna, 769 F.2d 243, 249 (5th Cir. 1985)(emphasis in original).

> ... [or]
>> **(E)** any felony that is not otherwise a crime of violence . . . that involves the possession or use of a firearm . . . .
>
> ...
>
> The hearing shall be held immediately upon the person's first appearance before the judicial officer unless that person, or the attorney for the Government, seeks a continuance. . . . At the hearing, such person has the right to be represented by counsel, and, if financially unable to obtain adequate representation, to have counsel appointed. The person shall be afforded an opportunity to testify, to present witnesses, to cross-examine witnesses who appear at the hearing, and to present information by proffer or otherwise. The rules concerning admissibility of evidence in criminal trials do not apply to the presentation and consideration of information at the hearing. The facts the judicial officer uses to support a finding pursuant to subsection (e) that no condition or combination of conditions will reasonably assure the safety of any other person and the community shall be supported by clear and convincing evidence. The person may be detained pending completion of the hearing. The hearing may be reopened, before or after a determination by the judicial officer, at any time before trial if the judicial officer finds that information exists that was not known to the movant at the time of the hearing and that has a material bearing on the issue whether there are conditions of release that will reasonably assure the appearance of such person as required and the safety of any other person and the community.

A hearing may only be held if one of the circumstances listed in § 3142(f) is present.[4]

The Act additionally requires consideration of the following factors, prior to a determination of whether defendant is to be detained pending trial:

> **(g) Factors to be considered.** - - The judicial officer shall, in determining whether there are conditions of release that will reasonably assure the appearance of the person as required and the safety of any other person and the community, take into account the available information concerning - -
>
>> **(1)** the nature and circumstances of the offense charged, including whether the offense is a crime of violence, a Federal crime of terrorism, or involves a minor victim or a controlled substance, firearm, explosive, or destructive device;

---

[4] In this matter, all parties agree the detention hearing was held pursuant to (f)(1)(C)("an offense for which a maximum term of imprisonment of ten years or more is prescribed in the Controlled Substances Act"). [Rec. Doc. 144-2, p.3 and Rec. Doc. 183, p.2]

> (2) the weight of the evidence against the person;
>
> (3) the history and characteristics of the person, including--
>
>> (A) the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and
>>
>> (B) whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law; and
>
> (4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release . . . .

If the judicial officer finds (after the detention hearing and consideration of the above factors) that no condition or combination of conditions will reasonably assure the appearance of the person as required or the safety of any other person and the community, the judicial officer shall order the detention of the person before trial. § 3142(e).

It must additionally be noted, the Act raises a rebuttable presumption in favor of the government which provides:

> Subject to rebuttal by the person, it shall be presumed that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of the community if the judicial officer finds that there is probable cause to believe that the person committed an offense for which a maximum term of imprisonment of ten years or more is prescribed in the Controlled Substances Act (21 U.S.C. 801 et seq.) . . . .[5]

---

[5] The presumption also arises if "the judicial officer finds that there is probable cause to believe that the person committed . . . an offense under section 924(c) . . . of this title . . . ." Although the government did not address 18 U.S.C. § 924(c)("any person who, during and in relation to any . . . drug trafficking crime . . . uses or carries a firearm . . . .") at the detention hearing, it would seem to apply to this matter. One of the "overt acts" alleged in the conspiracy charge states, "On November 16, 2006, DARIUS NATHANIEL FISHER was operating a 1996 Chevrolet Impala automobile in Houston, Texas, in possession of a Taurus Model PT140 .40 caliber semi automatic firearm." [Rec. Doc. 98, p.4] (Count

18 U.S.C. § 3142(e). In this matter, defendant was charged under the Controlled Substances Act, with violations carrying maximum penalties of ten years or more confinement. Thus, the rebuttable presumption - that no condition or combination of conditions will assure his appearance at trial or the safety of the community if he is released - is triggered. U.S. v. Rueben, 974 F.2d 580, 586 (5th Cir. 1992); *see also* Trosper at 1110 ("[T]he presumption against pretrial release arises when drug crimes are charged in the indictment.") If either presumption remains unrebutted, defendant must be detained. Rueben at 586 (failure to rebut either presumption "is sufficient; both are not required").

As stated in Rueben:

> The rebuttable presumption of § 3142(e) shifts to the defendant only the burden of producing rebutting evidence, not the burden of persuasion; however, the mere production of evidence does not completely rebut the presumption. In making its ultimate determination, the court may still consider the finding by Congress that drug offenders pose a special risk of flight and dangerousness to society.

Id. at 586 (citations omitted). Even when rebutted, the presumption "remain[s] in the case as a factor to be considered by the judicial officer." U.S. v. Hare, 873 F.2d 796, 798 (5th Cir. 1989)(internal punctuation omitted).[6] "[T]he risk of continued narcotics trafficking on bail does constitute a risk to the community." Rueben at 586 (citing Hare at 798, and United States v. Hawkins, 617 F.2d 59 (5th Cir. 1980)).

When the district court acts on a motion to revoke a magistrate's pretrial detention order, the court acts *de novo* and makes an independent determination of the proper pretrial detention or

---

41 seeks forfeiture of that firearm.) However, because this conduct has not been addressed by either party, the Court declines to do so as well.

[6]"The statute thus seems to create an unusual set of weights and measures in which the burden of persuasion is on the government, not the defendant, but the presumption may be weighed in the evidentiary balance." Hare at 799.

conditions for release. U.S. v. Fortna, 769 F.2d 243, 249 (5th Cir. 1985). Finally:

> The district court has discretion in determining whether to conduct a supplementary evidentiary hearing as part of its de novo review. Accordingly, the district court has the discretion to conduct its de novo review by examining the pleadings and the evidence which was developed before the magistrate judge and then adopting the magistrate judge's pretrial detention order.

U.S. v. Hensler, 18 F.3d 936, *2 (5th Cir. 1994)(citations omitted).[7]

## Proceedings Below

In the Magistrate Judge's Order of Detention Pending Trial, she found there was probable cause to believe defendant has committed an offense for which a maximum term of imprisonment of ten years or more is prescribed under the Controlled Substances Act, and that defendant had "not rebutted the presumption established by finding No. (1) [*infra*] that no condition or combination of conditions will reasonably assure the safety of the community." [Rec. Doc. 137]

The Magistrate Judge's written findings were as follows:

> 1) Investigation that included surveillance, telephone wire interceptions, and co-defendant testimony, has resulted in an indictment of Defendant Darius Nathaniel Fisher ("Defendant" "Fisher") for conspiracy to possess with the intent to distribute cocaine, and unlawful use of communication facilities in furtherance of a drug conspiracy. Testimony at the hearing on the government's request for detention showed Fisher to be the "co-head" of a drug dealing organization. It was further reported that Fisher was the alleged source of supply for cocaine that was moved from Houston, Texas, to the Western District of Louisiana. Although this conspiracy reportedly led to the sale of 20-40 kilos of cocaine a month in Louisiana, only two kilos have been seized pursuant to law enforcement investigation. In November 2007, and in connection with the reported drug dealing activities, Fisher was stopped in a vehicle in which approximately $129,000.00 was concealed.

> 2) Testimony revealed that in October 2007, a telephone conversation, which was intercepted between Fisher and the co-head of the organization, revealed Defendant to be commenting on the fact that he had just shot someone twice.

> 3) Fisher is 29 years old, and is said to work for his father earning $2000.00

---

[7]Neither party has requested a supplemental evidentiary hearing in this matter.

-7-

a month.

4) Although Defendant claimed that he, his wife and two children live with his parents, Fisher's father's information to the Pretrial Services Agency was equivocal on that matter.

5) In December 2006, Fisher was found guilty of possession of marijuana and given a six month term of probation. That probation was revoked following a subsequent conviction for manufacturing or delivery of a controlled substance. For that felony accusation, Fisher was given a two year term of probation, which was likewise revoked.

6) In March 2007, Fisher was accused of unlawful possession of a firearm by a felon. That charge was apparently reduced to a misdemeanor for which Fisher served 45 days in jail.

7) From the evidence produced at the hearing on the government's request for detention, when coupled with the information from the Pretrial Services Agency report, the court concludes that there is no condition or combination of conditions that it could set, and that this Defendant would follow, that would reasonably assure the safety of the community if he is not detained pending trial.

[Rec. Doc. 137]

The Court finds the Magistrate Judge's statement of reasons are supported by the transcript of the detention hearing and the pre-trial services report.

### Analysis

**(1) The nature and circumstances of the offense charged, including whether the offense is a crime of violence or involves a controlled substance. 18 U.S.C. § 3142(g)(1).**

In the motion before this Court, defendant's first argument addresses factor (g)(1). Defendant admits his offenses involve a controlled substance. He then argues:

> There is no proof that the Defendant has committed acts of violence. During the detention hearing, testimony of DEA Agent Berard revealed that a telephone conversation, which was intercepted between Fisher and Joseph Lee Helaire, the head of the Louisiana criminal organization, revealed Defendant to be commenting on the fact that he had just shot someone twice. (Transcript of Detention Hearing, Page 14, Lines 22-25) The Agent also testified that he contacted the Houston Police Department regarding the shooting and that the shooting was not corroborated.

> (Transcript of Detention Hearing, Page 28, Lines 10-19) The Agent further testified that this conversation of an alleged shooting was the only intercepted conversation that mentioned Fisher allegedly using violence. He also admitted that there were no wiretaps in which Mr. Fisher ordered any type of violence whatsoever. (Transcript of Detention Hearing, Page 29, Line25, Page 30, Lines 1-4)

[Rec. Doc. 144-2, p.5]

First, the Court notes factor (g)(1) does not require a finding that the offense charged involves a controlled substance *and* is a crime of violence; rather, this factor is set forth in the disjunctive ("whether the offense is a crime of violence *or* involves a controlled substance." § 3142(g)(1). Second, the "offenses charged" are not crimes of violence, but rather are offenses involving controlled substances. As defendant was not charged with a crime of violence *(i.e.* shooting a person two times), the testimony regarding the above intercepted telephone conversation will be addressed under § 3142(g)(4) ("the nature and seriousness of the danger to any person or the community that would be posed by the person's release").

**(2) The weight of the evidence against the person. § 3142(g)(2).**

With regard to the second factor, defendant argues as follows:

> The weight of the evidence as to the crimes charged is weak in this case. The amount of controlled dangerous substances attributable to the Defendant in this case is approximately two (2) kilograms of cocaine that allegedly was given to an unindicted co-conspirator by the Defendant. The source of the information comes from an unindicted co-conspirator who was most likely attempting to work off some of his own charges. Considering the alleged conspiracies and the massiveness of the alleged criminal organization, in what has been deemed a complex case by the Court for the Western District of Louisiana, the amount attributable to the Defendant seems of fall short of expectations. Furthermore, the evidence was insufficient to establish probable cause. The DEA Agent testified that he did not have any evidence that corroborates the statement that Fisher is still engaging in the sale of narcotics. (Transcript of Detention Hearing, Page 35, Lines 20-23)

[Rec. Doc. 144-2, p. 6]

The Court disagrees. At the detention hearing, the government called Special Agent Chad Berard of the Drug Enforcement Administration who testified Mr. Fisher was the co-leader and the supplier of cocaine for a criminal organization, as described in the Superceding Indictment.[8] (Agent Berard is the co-case agent assigned to this matter along with Officer Kane Marceneaux.) Agent Berard testified more than five kilograms of cocaine had been seized from this criminal organization. [Transcript, p.34] Furthermore, Agent Berard testified the organization bought approximately 20 to 40 kilograms of cocaine per month. [Transcript, p. 7] Agent Berard testified "the Lieutenant of the organization after his arrest made a post-arrest statement that all the cocaine for the Helaire organization came from Darius Fisher in Houston, Texas." [Transcript, p. 40] Agent Berard testified "whenever there was either a load of cocaine or money coming in there was conversations with Mr. Fisher." [Transcript, p. 20] Agent Berard testified there were at least fifty "pertinent" intercepted telephone calls involving Mr. Fisher, and many of those conversations discussed the number of kilos of cocaine to be delivered to Louisiana, the price of the kilos, concealment of drug proceeds from law enforcement, etc.

Additionally, Agent Berard testified the interceptees were aware a pole camera had been placed near the residence of Mr. Helaire (the co-leader), and conversations were intercepted which discussed the fact someone in the criminal organization had shot the pole camera with a shotgun. [Transcript, pp. 9-10]

Agent Berard further testified in the summer of 2006, DEA conducted surveillance of a confidential informant entering Mr. Fisher's residence, and then departing with a spare tire allegedly provided to him by Mr. Fisher. Subsequently, the confidential informant was stopped by law

---

[8]The other "co-leader," Joseph Lee Helaire, is now deceased. [Transcript, pp. 25-27]

-10-

enforcement, whereupon two kilograms of cocaine were found in the spare tire provided by Mr. Fisher.

In November of 2007, the DEA began intercepting telephone calls wherein Mr. Fisher advised he would be coming to Lafayette to pick up drug proceeds. Thereafter, surveillance was conducted, and Mr. Fisher was stopped by law enforcement in the Lake Charles area, who seized approximately $129,852.00 in cash which was concealed throughout his vehicle.[9]

The agent further testified a confidential informant notified the D.E.A. that Mr. Fisher continued to traffic drugs up until the date of his arrest.

### (3) The history and characteristics of the person. § 3142(g)(3).

Regarding this factor, defendant argues:

> At the time of Fisher's arrest he was gainfully employed in a family business. The extent of Fisher's criminal history involves one (1) felony conviction for manufacture or delivery of a controlled substance in 1997 and three (3) misdemeanors. He has lived in Houston his entire life. He is married and supports two (2) young children. He plays a vital role in his family's life. At the time of the current offense or arrest, Fisher was not on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law.

[Id. at 6] The Court accepts defendant's argument on this factor as correct for purposes of this Ruling.

### (4) The nature and seriousness of the danger to any person or the community that would be posed by the person's release. § 3142(g)(4).

Defendant argues:

> The Court found that there was no condition or combination of conditions

---

[9]Earlier wire intercepts from the same month discussed another transaction involving approximately $150,000. Agent Berard testified that although an agent observed the transfer of money, the DEA agents were unable to respond quickly enough to stop and search Mr. Fisher's person and/or vehicle.

-11-

> that it could set that the Defendant would follow that would reasonably assure the safety of the community if he was not detained pending trial. Contrary to what the Government alleged with reference to the alleged act of violence communicated over the phone, it was never corroborated after an intense effort by Agent Berard to confirm whether or not that was just some tall talking or whether that was in fact true. Other than this particular phone intercept, no other intercepted calls evidenced Fisher ordering or speaking of any violence whatsoever. These assertions do not have extrinsic evidence to support their validity.

[Id. at 6-7]

This Court's review of the record reveals at the detention hearing, Agent Berard testified that on October 27, 2007, the DEA intercepted a telephone call between Darius Fisher and Joseph Helaire, wherein, according to Agent Berard, Mr. Fisher stated as follows:

> [H]e just shot somebody two times and they were in the ditch. And he departed the scene. And when he got to his residence, he didn't realize how much blood he had on him until he looked in the mirror and he was full of blood and he had to change his shirt.

[Transcript, pp. 14-15] Agent Berard testified the DEA contacted the Houston Police Department, but "they could not find anything." [Transcript, p. 28] He further stated, "It's not uncommon for drug type disputes to go unreported to the police." [Id.]

After a review of the entire record and the factors set forth in § 3142(g), this Court agrees with the Magistrate Judge that there is probable cause to believe defendant has committed an offense for which a maximum term of imprisonment of ten years or more is prescribed in the Controlled Substances Act. This Court also agrees with the Magistrate Judge's conclusion that defendant must be detained pending trial, because he did not rebut the presumption that no condition or combination of conditions will reasonable assure the safety of the community if defendant is released prior to trial. At the hearing, the government presented clear and convincing evidence that defendant constitutes a danger to the community, by way of defendant's statements (contained in an intercepted telephone conversation) that on October 27, 2007, he shot a person two times, left him

or her in a ditch, and then departed the scene. The only evidence rebutting this evidence was brought forward on cross examination, wherein Agent Berard testified that the DEA was unable to corroborate defendant's statements regarding the shooting. The Court finds this is insufficient to rebut the evidence (contained in defendant's own admission of the shooting) that no condition or combination of conditions will reasonable assure the safety of the community. Additionally, from this Court's review of the record, it appears defendant produced no evidence to rebut the presumption he is a danger to the community, because of the risk he will continue to traffic drugs pending trial.[10] *See e.g.* United States v. Hare, 873 F.2d 796, 799 (5th Cir. 1989); U.S. v. Rueben, 974 F.2d 580, 587 (5th Cir. 1992).

### Conclusion

Due to the foregoing, defendant's motion for revocation of detention order is **DENIED**. The court orders that defendant Darius Fisher be held without bond pending trial of this matter, as follows: (1) defendant is committed to the custody of the Attorney General for confinement in a corrections facility separate, to the extent practicable, from persons awaiting or serving sentences or being held in custody pending appeal; (2) he is to be afforded reasonable opportunity for private consultation with his counsel; (3) on order of a court of the United States or on request of an attorney for the government, the person in charge of the corrections facility in which defendant is confined is to deliver him to a United States Marshal for the purpose of appearing in connection with any court proceeding.

---

[10] As noted, the government presented evidence defendant continued to traffic narcotics until the date of his arrest. [*Infra* p.11]

THUS DONE AND SIGNED this \_\_\_3\_\_ day of December, 2008.

_____
REBECCA F. DOHERTY
UNITED STATES DISTRICT JUDGE