# UNITED STATES DISTRICT COURT

# WESTERN DISTRICT OF LOUISIANA

# LAFAYETTE-OPELOUSAS DIVISION

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | * | **CRIM. NO. 6:08CR-0205-01** |
| **VERSUS** | * | **JUDGE DOHERTY** |
| **DARIUS NATHANIEL FISHER** | * | **MAGISTRATE JUDGE HILL** |

## <u>REPORT AND RECOMMENDATION</u>

The defendant, **DARIUS NATHANIEL FISHER** ("Fisher"), has filed a motion to dismiss the pending indictment. [Record Doc. 430]. The government filed an opposition to the motion on April 6, 2010. [Record Doc. 436]. For those reasons set out below, it is recommended that the motion to dismiss be **denied**.

### A.  The position of the parties

Fisher argues that the superseding indictment now pending should be dismissed for violation of the Double Jeopardy Clause of the United States Constitution.  In sum, Fisher argues that the court's *sua sponte* declaration of a mistrial, over the objection of Fisher, bars his trial on the superseding indictment because the reasons stated by the court for the mistrial failed to reach the "manifest necessity" standard required before a retrial is permissible.

In opposition, the government argues that a retrial is permissible.  The government argues that because the prior trial could not proceed because of the issue that arose after the jury was impaneled, that is, the questionable mental capacity of co-defendant, Melvin

Alexander ("Alexander"), trial on the superceding indictment is permissible.  The

government argues that the requirement of a mental examination to determine the mental

capacity of Alexander was required, and that this requirement satisfies the "manifest

necessity" standard for a retrial of Fisher.[1]

### B.  The applicable law

The Double Jeopardy Clause protects a defendant against multiple punishments or

repeated prosecutions for the same offense.  *United States v. Wilson*, 420 U.S. 332, 343,

95 S.Ct. 1013 (1975).  Jeopardy attaches when the jury is sworn.  *Downum v. United

States*, 372 U.S. 734, 83 S.Ct. 1033 (1963).  The defendant has a "valued right" to have

his trial completed by a particular tribunal.  *United States v. Dinitz*, 424 U.S. 600, 606, 96

S.Ct. 1075, 1079 (1976).

Of course, there are occasions where a second trial of the defendant is permissible

although the jury impaneled for the first trial was discharged without the defendant's

---

[1] Fisher also argues that the trial judge violated the provisions of Fed. R. Crim. P.  26.3 because the trial court failed to give Fisher's counsel an opportunity to comment on the propriety of the mistrial.

The undersigned has reviewed the transcript of the conference held October 1, 2009 at which the mistrial was declared.  The undersigned finds that the trial court substantially complied with the requirements of Rule 26.3.  The question before the trial court, at that time, was whether or not to sever Alexander's trial from one, or more, of his co-defendants and to thereafter proceed to trial without Alexander.

Initially, counsel for Fisher opposed the severance which he now suggests was the proper course of action.  [Tr.  Page 27].  After consulting with his client, counsel for Fisher changed his mind and withdrew his objection to the severance, requesting a speedy trial. [Tr.  Page 35].  Clearly, the court allowed counsel for Fisher a full right to be heard, and, in fact, counsel requested that the trial proceed.  Clearly, the requirements of Rule 26.3 were satisfied.

Even if the court had not complied with Rule 26.3, that failure would provide no relief for Fisher.  The Advisory Committee Notes accompanying the adoption of the Rule unequivocally state that the Rule "is not designed to change the substantive law governing mistrials."  Clearly, Rule 26.3 provides no substantive rights to Fisher.

consent. *Downum*, 95 S.Ct. at 1034.  Whether or not a new trial is permissible after a mistrial has been declared without the defendant's request or consent depends on whether or not there was a "manifest necessity" for the mistrial.  *Dinitz*, 96 S.Ct. at 606-607.  The decision of the trial judge to declare a mistrial is entitled to great deference.  *Arizona v. Washington*, 434 U.S. 497, 514, 98 S.Ct. 824, 835 (1978).  If the trial judge acts precipitously, however, a second trial is barred.  *United States v. Jorn*, 400 U.S. 470, 487, 91 S.Ct.  547, 558 (1971).

The Fifth Circuit, in applying these rules, has said as follows:

> The Supreme Court's reluctance to specify general categories of conditions and circumstances constituting "manifest necessity" reflects the deference which appellate courts are to give to a trial judge's considered determination that manifest necessity for a mistrial exists in a particular case. The decision to declare a mistrial is within the sound discretion of the trial court . . . . Thus, the mere existence of alternatives does not mean that the granting of a mistrial precludes retrial of the defendant where "reasonable judges could differ about the proper disposition,". . . and where the record, considered as a whole, indicates that the trial judge in deciding to declare a mistrial, carefully considered the alternatives and did not act in an abrupt, erratic, or precipitate manner. (internal citations omitted)

*Grandberry v. Bonner*, 653 F.2d 1010, 1014-1015 (5th Cir. 1981).

More recently, in *United States v. Campbell*, 544 F.3d 577 (5th Cir. 2008) the Fifth Circuit said :

> The Supreme Court counsels to give "great deference" to a finding of necessity if the district court exercised "sound discretion" in making that determination. "[T]he trial judge need not make an express finding of 'manifest necessity,' nor must he expressly state that he considered alternatives and found none to be superior." An appellate court "need only to be satisfied from the complete record that the trial judge exercised sound

> discretion in declaring a mistrial, *sua sponte*, in a factual setting that demonstrates a high degree of necessity for terminating the trial before the jury completes its solemn task of rendering a verdict." (footnotes and internal citations omitted)

*Campbell*, 544 F.3d at 581.

Rather than analyzing the facts of this case in the context of this Fifth Circuit authority, the defendant argues that this case should be analyzed using the "four indicators" recognized by the Ninth Circuit in *United States v. Bates*, 917 F.2d 388 (9th Cir. 1991). [Record Doc. 430-1, page 15].

**C. Analysis**

This Court, of course, sits in the Fifth Circuit and is therefore bound to apply precedent from this circuit where such precedent exists. The issue to be decided by this motion, that is, whether manifest necessity existed for the declaration of the mistrial, must therefore be analyzed within the framework set out by the Fifth Circuit in *Grandberry* and *Campbell*.

The jury in this case was selected and impaneled on September 28, 2009. [Record Doc. 359]. On September 30, 2009, the Court held a telephone conference with counsel regarding reports that the co-defendant, Alexander, had been exhibiting bizarre behavior which called into question his competency to continue with the trial. [Record Doc. 356]. A conference with counsel was set the next day, October 1, 2009, in open court. [*Id.*].

A careful review of the transcript of that conference reveals that it was initially the court's inclination to sever the trial of Alexander, and to continue with the trial of the remaining defendants before the jury which had been selected. The government objected

-4-

to the severance, as did, initially, counsel for all three defendants (Fisher, Alexander and Abdul Kareem Francois).  Only after counsel for Fisher consulted with his client did counsel withdraw his objection to the severance and indicate that he wanted to proceed to trial. [Tr. Page 35].

At that point, the court ordered briefing on the issue of whether or not Fisher's trial should be severed.  Briefs were to be due by 2 p.m. the next day. [Tr. Page 35].  However, as a result of the trial being delayed because of Alexander's mental condition, essential government witnesses were no longer available to testify at trial.  That problem could have been resolved had counsel for Fisher agreed to stipulate to the reports and chain of custody of the forensic chemists who were no longer available to testify live in court. Counsel for Fisher refused to so stipulate. [Tr. Page 38-39].

Accordingly, counsel for the government moved to continue the trial so that these witnesses would be available to testify.  The court granted the government's motion. [Tr. Page 36].  Thereafter, the court, *sua sponte*, declared a mistrial. [Tr. Page 62-63].

While counsel for Fisher complains at length that he was not heard by the trial court, and was therefore unable to object to the mistrial, that argument is clearly refuted by the transcript.  There was a substantial colloquy between the trial judge and counsel on this issue, and counsel was heard at length.  In fact, counsel objected to the continuance and made his objections a matter of record.  Counsel's objections were considered, and rejected, by the trial court.

Accordingly, the sole issue to be decided is whether or not there was a "manifest necessity" to declare a mistrial.

As the Fifth Circuit recognized in *Grandberry* and *Campbell*, the Supreme Court has not specified general categories, conditions or circumstances which constitute "manifest necessity". Each case must turn on its own facts. While "great deference" is given to the trial judge to determine whether or not "manifest necessity" exists in a specific case, the Fifth Circuit will refuse to allow a second trial where the trial judge acted in an "abrupt, erratic or precipitate manner." *Grandberry*, 653 F.2d at 1015. That simply did not happen here.

The trial judge was faced with a unique set of facts. After the jury had been impaneled, it became clear that one of the defendants (Alexander) was going to have to be examined to determine whether or not he was competent to proceed.[2] By the time the court considered whether or not to sever the Fisher's trial from that of his co-defendants, essential government witnesses were no longer available to testify if the trial was to commence. This impediment to Fisher proceeding to trial immediately could have been removed by a simple stipulation. That stipulation was refused.

To have forced the government to trial without the testimony of the forensic chemists would have denied the government its right to a fair trial. While it is true that

---

[2] While not at issue here, there is no doubt that the declaration of a mistrial as to Alexander was as a result of "manifest necessity" so that his trial is not barred by the Double Jeopardy Clause. *See Featherston v. Mitchell*, 418 F.2d 582, 584 (5th Cir. 1969).

Fisher did not create the problem faced by the trial judge, it is equally true that the government was not at fault.

Fisher now argues that the better course of action would have been to sever the trial of Fisher from the trial of Alexander, and for the Fisher trial to have proceeded with the jury which had been impaneled.  This argument overlooks the fact that the government's forensic chemists were no longer available to testify.

The defendant argues that the unavailability of the government witnesses was due to a "lack of preparedness" by the government. [Record Document 40-1, page 24].  The defendant relies on the Supreme Court's decision in *Downum,* and on Justice Douglas' dissent in *Gori v. United States*, 367 U.S. 364, 370, 81 S.Ct.  1523, 1527 (1961), to support his position.

In *Downum*, the Government failed to subpoena, or otherwise assure the presence of, its witnesses for trial on two of six counts.  The government opposed the defendant's motion to dismiss those two counts and proceed to trial on the other four counts.  *Downum*, 83 S.Ct. at  1035.  Instead, the court denied the defendant's motion and discharged the jury over the objection of the defendant.  *Id.* at 1034 and 1035.

The Court held that the Double Jeopardy Clause applied, and that the re-trial was barred.  However, the Court was careful to point out, citing approvingly its prior decision in *Wade v. Hunter*, 336 US 684, 691, 69 S.Ct.  834, 838 (1949), that, "we refuse to say that the absence of witnesses 'can never justify discontinuance of a trial.'  Each case must turn on its own facts." *Downum*, 83 S.Ct. at 1035.

The facts faced by the trial judge here are manifestly different from those in *Downum*. The unavailability of the government's witnesses was not caused by the unpreparedness of the government, but was rather caused by the abrupt mental deterioration of co-defendant Alexander. Had trial been able to proceed as scheduled, the government witnesses would have been available. Their unavailability was caused by the delay necessitated by the court having to deal with the potential incompetence of Alexander, not by any failure of the government.

It is clear from this record that the trial judge carefully considered all potential alternatives to a mistrial. It is equally clear that the trial judge did not act in an abrupt, erratic, or precipitate manner. It is clear from the transcript that the trial judge considered each and every alternative and came to the conclusion that there was no viable option other than declaring a mistrial. The fact that other reasonable judges might have come to a different conclusion is irrelevant. *Grandberry*, 653 F.2d at 1014. This record clearly supports the court's decision to declare a mistrial, and, thereby, demonstrates that "manifest necessity" existed.[3]

That being the case, the Double Jeopardy Clause does not prohibit the defendant, Darius Nathaniel Fisher, from being tried on the charges set out in the superseding indictment.

---

[3]The trial judge need not make an express finding of "manifest necessity," nor must the judge expressly state that the alternatives were considered and that none were found to be superior. *Campbell*, 544 F.3d at 581.

For these reasons, the undersigned recommends that the motion to dismiss be **denied.**

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and F.R.Civ.Proc. 72(b), parties aggrieved by this recommendation have fourteen (14) days from service of this Report and Recommendation to file specific, written objections with the Clerk of Court.  A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof.  Counsel are directed to furnish a courtesy copy of any objections or responses to the District Judge at the time of filing.

**FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FACTUAL FINDINGS AND/OR THE PROPOSED LEGAL CONCLUSIONS REFLECTED IN THIS REPORT AND RECOMMENDATION WITHIN TEN (10) DAYS FOLLOWING THE DATE OF ITS SERVICE, OR WITHIN THE TIME FRAME AUTHORIZED BY FED.R.CIV.P. 6(b), SHALL BAR AN AGGRIEVED PARTY FROM ATTACKING THE FACTUAL FINDINGS OR THE LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT COURT, EXCEPT UPON GROUNDS OF PLAIN ERROR.  *Douglass v. United Services Automobile Association*, 79 F.3d 1415 (5th Cir. 1996).**

Signed at in chambers at Lafayette, Louisiana on April 15, 2010.

C. MICHAEL HILL
UNITED STATES MAGISTRATE JUDGE

-9-