RECEIVED

MAY - 3 2010

TONY R. MOORE, CLERK
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE, LOUISIANA

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

LAFAYETTE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | CRIMINAL ACTION NO. 08-00205-01, 5, 9 |
| VERSUS | JUDGE DOHERTY |
| DARIUS NATHANIEL FISHER, ET AL | MAGISTRATE JUDGE HILL |

### JUDGMENT

After an independent review of the record, including the objections filed by defendant Darius Fisher, and having determined the findings and recommendation issued by the Magistrate Judge in the Report and Recommendation previously issued herein [Doc. 440] are correct under the applicable law, this Court DENIES defendant Darius Fisher's motion to dismiss [Doc. 430] for the reasons stated in the Report and Recommendation [Doc. 440], as supplemented with the following additional pertinent factual and procedural history, and jurisprudence[1]:

As the **September 28, 2009 trial date** approached[2], a sequence of events began to unfold, which when viewed contextually, gave and continue to give this Court pause. As the Magistrate's Report and Recommendation does not contain a complete recitation of these occurrences, this Court supplements the Report and Recommendation as follows.

---

[1] The portion of the Report and Recommendation addressing the procedural history and factual background in this matter is found at pp. 4-5. [Doc. 440]

[2] An indictment issued in this matter on July 16, 2008; a superceding indictment issued on September 9, 2009. [Doc. Nos. 1, 97] Defendant was arrested on September 8, 2008. On August 21, 2008, the government filed a motion to set this trial outside of the time limits contained in the Speedy Trial Act, as at that time, three defendants (including Fisher) had not yet been apprehended (to date, one defendant remains at large), and based upon the complexity of the case. The motion was granted. On November 21, 2008, trial was set to commence on September 28, 2009. [Doc. 215]

On **August 31, 2009,** a telephone conference was held to discuss a motion to continue the trial filed by the government. [Doc. 305] The government sought a continuance due to the unavailability of two forensic chemists from the Acadiana Criminalistics Laboratory on the scheduled trial date[3]; **counsel for Darius Fisher, Derriel McCorvey, had refused to negotiate a stipulation regarding the testimony of those witnesses.** [Doc. 303] (At the conference, all defense counsel, with the exception of counsel for Mr. Fisher, agreed to enter into a stipulation for trial regarding the chemists' testimony.) The Court was unwilling to continue the trial, as defendant Fisher had moved, on three occasions, for a revocation of the order requiring that he be detained pending trial. [Doc. Nos. 217, 233, 236] Due to Mr. McCorvey's unwillingness to enter into a stipulation, the Court proposed (and all counsel agreed) that the chemists' testimony be taken in open court, prior to trial, by way of video deposition, for presentation to the jury during trial, so that trial could proceed as scheduled. [Doc. 305]

The following day **(September 1, 2009),** a full **pretrial conference** was held. At the conference, the Court addressed **Mr. McCorvey's assertion** made in the Joint Status Report [Doc. 301] that a pretrial *James* hearing was needed. Due to the schedules of all, a *James* hearing would have resulted in a delay of the trial, and thus the Court ultimately denied counsel's request for a pretrial *James* hearing, deciding instead it would determine whether or not a conspiracy had been adequately proven after hearing the government's evidence at trial.[4] [Doc. 348 at p.61, l.12 - p.62,

---

[3]Both witnesses were unavailable due to having scheduled maternity leave on dates conflicting with the trial date in this matter, thus the government had little or no control over this matter.

[4]While the Court noted this was not the "preferred" procedure pursuant to applicable jurisprudence as it increased the risk of a mistrial, it nevertheless was a permissible procedure and was required in this matter if it was going to proceed to trial as scheduled. *See United States v. James Ricks*, 639 F.2d 1305 (5th Cir. 1981).

l.1, p.70, l.24 - p.72, l.2] Of note, **a *James* hearing had previously been set before the Magistrate Judge for March 31 and April 1, 2009**, yet **Mr. McCorvey** had **agreed to cancel that hearing by email dated March 19, 2009**. [Docs. 233, 234; *see also* Court Ex. A] Further, **the request for a pretrial *James* hearing, made at the pretrial conference, was untimely and in violation of the deadlines set forth in the Scheduling Order** governing the case issued on December 4, 2008 [Doc. 219, p.6] At that conference, **counsel of Darius Fisher, Mr. McCorvey, made an untimely suggestion,** for the first time, that he **"might file" a motion for a bill of particulars or a motion to dismiss certain counts**. Either of the suggested motions would have resulted not only in delay of the trial, but also were made untimely, and thus in violation of the Scheduling Order governing this case. [Id. at p.112, l.11 - p.115, l.11; *see also* Doc. 219, p.6] The Court noted then, and points out here, **Mr. Fisher had originally been indicted on July 16, 2008, the superceding indictment had issued on September 9, 2008** [Docs. 1, 97], **the pretrial conference was over one year later, on *September 1, 2009.*** Both indictments contained the counts upon which counsel's then suggested motion would have been based. Thus, **counsel had waited until shortly before the eve of trial, despite having had notice of the purportedly defective indictment for approximately one year**, to suggest the filing of these motions, not only in clear violation of the Court's Scheduling Order, but also, again, threatening the scheduled trial.[5]

On Monday, **September 21, 2009 (seven days prior to trial)**, the Court **received correspondence from counsel for Darius Fisher, Derriel McCorvey**, stating he "would like to

---

[5]Again, the Court notes Fisher, *himself*, was consistently adamant about timely proceeding to trial, and had filed three motions for revocation of his detention order, with the last two premised, in part, upon a denial of due process due to prolonged pretrial incarceration.

3

**notify the Court of a potential for delay,"** due to "problems with obtaining discovery from the Government." [Court Ex. B, p.1] More specifically, the letter stated that on September 1, 2009, following the pretrial conference, that he had asked counsel for the government "about the existence of 'clean' transcripts, those without the Government Agent's synopsis or interpretation of intercepted calls." [Id.] He further asserted the AUSA had assured him clean transcripts had been provided in the original discovery package, however, "[s]ince that time, [Mr. McCorvey's] office ha[d] taken painstaking efforts; reading, reviewing and printing the multiple disc set to locate the transcripts and could not locate them." [Id.] The letter continued that on September 21, 2009 (the same date of the correspondence to the Court), **he had contacted the government's paralegal** assigned to this case, and **she had advised "the clean transcripts** were not included in the original fifteen (15) disc discovery package," but rather, **had been provided on September 21, 2009 "in supplemental discovery in a package that accompanied the package containing the discs of the video depositions of [the two forensic chemists]...."** [Id.]

(**Later, as will be addressed below, counsel for Darius Fisher argued he did not open the entirety of this package, in part because he believed it not to be relevant to his client's case. Additionally, on the first day of trial,** defense counsel for Darius Fisher, again, raised issues surrounding the government's discovery; the Court, upon investigation, learned defense counsel had received the government's original discovery package on **October 30, 2008** (which included **audio recordings of all wire intercepts**, as well as **60 to 90 "line sheets"** the government thought were most incriminating and/or most pertinent to its case)[6]; counsel for Darius Fisher had received a

---

[6]Thus, counsel had all audio recordings approximately eleven months prior to trial.

4

**supplemental discovery package from the government** on **January 29, 2009**, which **included all line sheets the DEA had created.**[7])

Mr. McCorvey, also, in **the September 21, 2009 correspondence** alleged, "the Government ha[d] been sending daily through email supplemental discovery responses which contain documents that the Defendant would like to include as exhibits and [his] office [was] having to send voluminous materials for copying for use at trial," **which may require a "delay" of the trial**. Finally, he asserted the government's failure to provide "clean transcripts" prior to September 21, 2009, coupled with the "daily furnishing of additional, supplemental discovery ... ha[d] in [his] belief prejudiced the Defendants in this case." He concluded: "I do not know what the solution might be, but I do want to raise the issue with the Court **if additional time is required by the Defendant before this trial begins** in order to give Defendant sufficient time to digest the voluminous materials provided to [counsel]...." [Id. at 2] In other words, **Mr. McCorvey was again, suggesting a continuance might be necessary**.

On Friday, **September 25, 2009, the Court interrupted its (and all counsels') trial preparation and convened a telephone conference to discuss the allegations contained in Mr. McCorvey's correspondence** dated September 21, 2009. [Doc. 351] At that conference, it became clear, despite counsel for Darius Fisher's assertions to the contrary, "clean transcripts" (*i.e.* those which omitted the DEA agent's synopsis, interpretation and/or work product from the intercepted

---

[7]"Line sheets" being described as the documents created by the agent monitoring a wire intercept. A line sheet is either a transcript, partial transcript or synopsis – depending upon the relevance of the call to the case, and the listener's typing speed – and typically contains the listener's opinion regarding any code words, the person(s) believed to be speaking to the target on the intercept (should the agent be able to determine same), as well as other opinion and work product. (See transcript of Trial Day 1 for full detail.)

5

calls) **had been provided to defense counsel on September 21, 2009, along with the redacted versions of the video trial depositions of the two forensic chemists,** *however, defense counsel had failed to review the transcripts*, arguing the government had not indicated the transcripts were included in that package. The argument was wholly unpersuasive as the government had included **a cover letter, immediately followed by an index, immediately followed by the transcripts.**[8] Additionally, although counsel for Darius Fisher argued in his September 21 correspondence that "the Government ha[d] been sending daily through email supplemental discovery responses," the Court found **defendant was engaging in "hyperbole,"** and **the government had in fact, not been sending "daily" supplemental discovery.**[9]

---

[8]At the hearing, Mr. McCorvey stated he received the package on September 21, *but did not open it until September 25*, because *he presumed* the package contained only the video trial depositions of the two chemists, and he was of the opinion the chemists' testimony was irrelevant as to his client - an argument this Court found perplexing as Mr. McCorvey, on behalf of Darius Fisher, was the only counsel who ultimately refused to stipulate to the chemists' reports, and as Mr. McCorvey had noted in his September 21 letter that the government **paralegal had** *specifically advised him, upon his inquiry, that the "clean transcripts" were sent in the September 21 package*. The Court later determined after additional investigation and inquiry (on the first day of trial), that the "clean transcripts" at issue were those transcripts the government planned to use only as a jury aid at trial, while it played the actual audio recordings of the wire intercepts it intended to use in its case-in-chief. In the course of drafting this Ruling, and after a painstaking review of the transcripts, the parties' filings, and all applicable portions of the record, the Court has been able to better discern Mr. McCorvey's arguments, as well as the government's responses thereto. During this review, it has become clear that when asked about the existence of "clean transcripts," the government paralegal responded within the context of transcripts for submission *at trial* as a jury aid, whereas in reality, it would seem, Mr. McCorvey was inquiring as to whether or not the government had provided transcripts for use at trial of every wire intercept existing in this matter, or at the very least, every wire intercept *Mr. McCorvey wished to use* at trial *in his* case-in-chief, information presumably not known to the government. Regardless, the Court notes Mr. McCorvey was and had been in possession of the evidence itself; all of the audio recordings (and line sheets) **for almost one year**, and of all line sheets **eight months** prior to trial.

[9]Ultimately, it was determined the "voluminous," daily, supplemental discovery argued consisted of the following, sent on September 11, 13, 22, and 23 of 2009: a plea agreement of a confidential informant the government intended to call at trial, notice that the government had filed a Rule 35 motion on behalf of the confidential informant, the requested "clean transcripts" discussed above, the CV of the government's fingerprint expert (as well as the CV of the government's backup fingerprint expert), the rap sheets of three potential witnesses, notice that another potential witness had no criminal history, state

6

During the conference held on **September 25** (to discuss Mr. McCorvey's letter dated September 21) **Mr. McCorvey also argued that on September 22, 2009, he received a disc containing new wiretap conversations** which had never been provided in any form (*i.e.* neither a clean, nor unclean - a.k.a. "line sheet" - copy)[10]. Specifically, counsel for Darius Fisher **asserted call no. 19005 had never been provided**, and additionally asserted there "may be other unproduced wire intercepts, but **he had not yet completed his review of the materials**" as, it was **later learned, he had not opened the package containing discovery sent to him by the government on September 21 until September 25 (the day of the conference).**

In response, counsel for the government stated it was his belief <u>all</u> line sheets had been provided in January of 2009, however, he would have to speak with the case agent to be certain call no. 19005, in fact, had been provided, **again forcing delay and additional investigation and research by the government to meet allegations made by counsel for Darius Fisher, which were, again, later found to be inaccurate**. As to call number 19005, the Court issued an order prohibiting the government from using that specific evidence at trial, **unless and until the government provided documentation the evidence had been timely provided** to defendant. [Doc. 351] **Mr. McCorvey also**, along with counsel for Mr. Alexander (Pride Doran), **asserted the government had affirmatively declared at the pretrial conference that a certain confidential informant would not testify at trial who**, they now believed would testify for the government, and

---

court records regarding co-defendant François (of which his counsel was already aware), and a two-page call detail report regarding certain calls made from the jail by co-defendant Alexander to a third party (which had no relevance to Mr. McCorvey's client).

[10] After undertaking this painstaking review, it appears the disc to which Mr. McCorvey was referring (allegedly containing unproduced wiretap conversations) was actually a disc containing the previously discussed jury aid transcripts.

thus relief was due – again, **upon review of the transcript, this allegation was found to be inaccurate**. The Court instructed all counsel to review the transcript from the pretrial conference, requiring yet additional research, investigation and delay on the cusp of trial, and thereafter, should defense counsels' assertion be accurate - that the government had declared the informant would not testify at trial - the government then, would be prohibited from calling that informant as a witness at trial. [Id.] Mr. McCorvey further argued the Court had issued an order at the pretrial conference, requiring the government to identify for defendants *all unindicted co-conspirators* no later than September 2, 2009, and **the government was in violation of that order.** ( Again, upon review of the record, requiring yet again additional research and delay, the assertion was found to be inaccurate.) The Court, again, instructed all counsel to review the transcript of the pretrial conference to determine whether the Court's Order was directed toward all *co-conspirators*, or merely to all co-conspirator *statements*. The Court believed the latter to be the case. **As noted, after review of the transcript, again Mr. McCorvey was found to be in error**.

**Due to the numerous allegations made by counsel for Darius Fisher** regarding discovery, co-conspirator statements, and confidential informants, at the September 25, 2009 conference – with trial scheduled to start on September 28, 2009 – the Court ordered the following: the court reporter was to create a transcript of the pretrial conference and submit same to counsel no later than 2:00 p.m. on Sunday, September 27, 2009; counsel were to then review the transcript; following jury selection on Monday, September 28, 2009, counsel would remain in Court for a conference to resolve all of the foregoing issues which could be resolved by a review of the transcript of the pretrial conference **(thus causing a delay of the trial)**; in order to provide Mr. McCorvey with the opportunity to "digest" the "voluminous" new discovery, the jury would be instructed not to return

to Court until Thursday, October 1, 2008 at 11:00 a.m. **(thus causing an additional delay of trial)**; all counsel were to be in court on Thursday, October 1, 2008 at 9:00 a.m., and at that time, Mr. McCorvey was to definitively advise all counsel and the Court if he had found any other intercepts which he believed had not been previously provided in any fashion, as **he was unable to identify any at that time**; [Doc. 351, see transcript for full detail] Thus, counsel for Darius Fisher, by raising unsupported allegations in a dilatory fashion, caused the multiple delays of the trial, and requested additional time.

**On September 28, 2009 (the first day of trial)**, prior to voir dire, the Court convened a separate **hearing in open court**, to address various, **additional late-filed**, proposed voir dire questions submitted by counsel for the **government and counsel for Mr. Alexander**. [Docs. 344, 359] Prior to addressing the proposed voir dire, **counsel for Darius Fisher, Derriel McCorvey orally moved for a "full continuance" of the trial**, asserting over the weekend **he had discovered a "mislabeled disc" containing 2400 wire intercepts**, and after comparing the original discovery package to the supplemental discovery package, **"he realized he had only been provided with approximately 114 of the 2400 wire intercepts."** Counsel for the government stated as this was **only now being raised**, he was unprepared to respond, **he had received no prior notice from defense counsel** that he would raise such an argument (despite the Court's order that Mr. McCorvey provide notice to the government prior to raising any such issues, to that the government would have adequate time to respond), and thus, **the government would have to, yet again, go back through all the discovery previously provided in order to respond**. However, the AUSA affirmatively stated he was certain the government had provided all of the intercepted telephone calls. The Court advised counsel that as the jury voir dire was waiting, **the late raised issue would be addressed**

**following the impanelment of the jury.** The Court further advised that if defense counsel's assertions were correct and as defendant argued prejudice, it would likely declare a mistrial. **It was after yet additional research and investigation by the government, that it was established that Mr. McCorvey was again in error.**

At approximately 4:00 p.m. jury selection was completed, the jury was empaneled, and sworn. At approximately 4:10 p.m. that same day, the previously ordered hearing commenced in open court to address the outstanding issues recently raised by Darius Fisher's counsel, Derriel McCorvey. **At the hearing, Mr. McCorvey reargued for his earlier, oral motion for continuance,** arguing: (1) he had not received the approximately 200 pages of "clean transcripts" the government told him it had provided in its January 29, 2009 supplemental discovery until September 22, 2009 **(it was subsequently determined this documentation had been sent to him with the redacted video testimony on September 21, 2009, but he had not opened or reviewed until September 25th**); and (2) over the weekend (during his review of the redacted video depositions), he had discovered a "mislabeled disc" in a package from the government containing 2400 wire intercepts – as discussed, the Court later **determined these 2400 wire intercepts had been provided in October 2008 by audio recording, and by January 2009 (at the latest) by line sheet** – and he had only previously been provided with 114 of those 2400 wire intercepts. It **was later determined the 114 calls referred to by counsel consisted of the jury aid transcripts; the "mislabeling" consisted of the following: in its original discovery package sent to counsel on** *October 30, 2008,* **the government had identified the DEA line sheets as "interception transcripts,"** whereas in its **supplemental discovery package** sent on **January 29, 2009,** the government **identified the DEA line sheets as "line sheets** (summaries of intercepted calls)."

Counsel for Darius Fisher then asserted he had been provided with only 114 "clean transcripts" out of 2400 calls.[11] *At the conclusion of the hearing, it was determined defense counsel had been provided with audio recordings of <u>all</u> wire intercepts (<u>including call no. 19005 which counsel for Darius Fisher had identified, by number, as not having been provided,</u>) on a compact disc on October 30, 2008*, as well as approximately 60 to 90 line sheets (those 60 to 90 line sheets consisted of the line sheets the government thought "most incriminating and/or most pertinent to its case"). After full hearing and investigation, it was further determined that the **government had provided defense counsel with <u>all</u> line sheets created by the DEA (<u>including the line sheet pertaining to call no. 19005) on January 29, 2009</u>.**[12] [13] The government explained it did not provide defense counsel with a *transcript* of every call, as it did not intend to use *every* call in its case, thus, the government did not need, as an aid to the jury, written transcripts of each audio tape or call. Instead, the government provided defense counsel with the transcripts it intended to use at trial as a jury aid, corresponding to *only* the intercepts it intended to use at trial - *i.e.* the transcripts of the 114 phone calls (consisting of the 200 pages Mr. McCorvey complained he had not received).

---

[11] Mr. McCorvey's argument at the time, on its face seemed contradictory and ambiguous in his choice of words. At one point it seemed he was arguing he had not received 2286 intercepts - *i.e.* 2400-114. However, he then seemed to argue he had received all 2400 intercepts, but had only received (on September 22, 2010) "clean transcripts" of 114 of the 2400 calls, which constituted "only 38% of the stuff we were going to be using as exhibits" at trial.

[12] DEA Agent Chad Berard explained the DEA does not create a line sheet for those calls they find wholly irrelevant to the crime they are investigating, nor do they create line sheets for calls which are minimized, as they do not listen to the speakers after it is determined the call must be minimized.

[13] The Court notes, due to Mr. McCorvey's unfounded allegations regarding call no. 19005, the government's paralegal asserts she spent untold hours over the prior weekend combing through 4,000 to 5,000 pages of discovery; thus, impairing the government's ability to prepare for trial. [*See* Court Ex. 4, Trial Day 1 (At the hearing held after the jury was excused on Trial Day 1, the government's paralegal clarified her email [Ct. Ex. 4, attached hereto as Ct. Ex. C] contained a typographical error - whereas the email states she had reviewed "14,000+" pages of discovery, the correct figure was 4,000.]

The government further noted that as Mr. McCorvey was retained counsel, had he reviewed the audio recordings and/or the line sheets previously provided, he could have had any calls he wished to use at trial transcribed. Additionally, the government noted it does not create transcripts of audio recordings it intends to use at trial until close to trial, as it considers the transcripts to simply be an aid to the jury, so that they can better follow the audio recordings.[14]

At the conclusion of the full hearing (late in the evening on September 28, 2009 – the date which was to have been the first day of trial), **the Court found notwithstanding the multiple allegations to the contrary by counsel for Darius Fisher, that the government had more than complied with its discovery obligation to defendants**, as it **had provided all audio recordings** (as well as 60 to 90 line sheets) of the wire intercepts **in October 2008**, it had provided **all line sheets** in its possession in **January 2009** (including the agent's opinion notes, which were not required pursuant to the federal rules, and the Court noted could only benefit defendant by giving him an indication of that which the government intended to argue at trial), and argued the law does not require the government to transcribe each and every audio recording for defense counsel.[15]

---

[14]Counsel for Darius Fisher throughout his arguments, was extremely unclear as to which transcripts he was claiming he did not receive. At the hearing, it was evident the government had provided Mr. McCorvey with the transcripts it intended to use as a jury aid during its case-in-chief. However, although not abundantly clear from the hearing transcript, it appears the government additionally provided Mr. McCorvey with 200 "new" transcripts which Mr. McCorvey wished to use during *his own case*. The government stated it had provided these "new" transcripts as a courtesy to Mr. McCorvey, as he had continually complained of not having "clean" transcripts. (The AUSA further explained these "new" transcripts were merely copies of the line sheets, but with the listener's opinion notes removed. He also explained that prior to providing defense counsel with these "clean" transcripts, the DEA agents had again reviewed the transcripts, and compared them to the audio recordings to make certain what they had written down on the line sheets was a verbatim transcript, as opposed to a partial transcript or synopsis.)

[15]Moreover, the Court reminded counsel for Darius Fisher the government's transcripts are merely the government's written recitation of the audio recording; however, the best evidence of what was said on any audio recording is contained within the audio recording itself, and the more prudent

Additionally, the Court found the government's different identification of the line sheets in the two sets of discovery - *i.e.* "interception transcripts" v. "line sheets (summaries of intercepted calls)" - **sufficiently identified the subject matter**, and **notwithstanding any labels used, it was incumbent upon defense counsel to review the discovery provided**, which apparently counsel for Darius Fisher had failed to do.[16] Accordingly, the **Court denied Darius Fisher's request for a "full continuance,"** relying primarily upon *U.S. v. Stephens*, 964 F.2d 424, 435 (5th Cir. 1992), as well as *U.S. v. Skilling*, 554 F.3d 529 (5th Cir. 2009), *U.S. v. Brown*, 628 F.2d 471 (5th Cir. 1980), and *U.S. v. Runyan*, 290 F.3d 223 (5th Cir. 2002). However, the Court noted at that time (and notes again here), it had previously granted Mr. McCorvey a continuance until Thursday, October 1, 2009 at 11:00 a.m. to allow him to review the material he had failed to review. Thus, counsel for Darius Fisher would have had over two days to have any calls he wished to use at trial transcribed. The Court then overruled Mr. McCorvey and Mr. Doran's objection to the government calling a certain confidential informant at trial, which they had alleged the government had affirmatively declared at the pretrial conference it would not call, as **neither were unable to identify any statement to that effect**.[17]

---

practice would be to review the audio recordings rather than merely rely upon the government's transcript, if for no other reason than to guarantee the accuracy of the transcripts and tonal nuance of the conversations.

[16]It was later determined counsel for Darius Fisher had looked only at the cover sheet (rather than looking at the also supplied index of the line sheets, followed by the line sheets themselves.) Apparently, when Mr. McCorvey looked at the cover sheet with its label of "line sheets (summaries of intercepted calls)", he determined the government had provided him with "a bunch of junk... not transcripts."

[17]Subsequent to the hearing, the Court itself reviewed the transcript and found no such statement - rather, the Court found at the pretrial conference, the government was uncertain as to whether or not it would call that particular witness, as it did not know if it wanted his identity revealed. The Court specifically instructed all counsel the government could indeed call the confidential informant to testify at trial, however, it deferred ruling on whether or not the government could use the audio recording of an

At this juncture, the remaining relevant facts are contained in the Magistrate Judge's Report and Recommendation. This Court has gone through the painstaking task of reviewing the entirety of the record, beyond that argued to the Magistrate Judge, as the Court, at the time of these events and now, continues to have grave concern as to the numerous times counsel for Darius Fisher made untimely and unfounded allegations, which forced delay of the trial and investigation and research by the government on the eve of trial, which interfered with the government's ability to prepare for trial, delayed the timely commencement of trial, and ultimately, forced the government to rearrange witness travel and availability multiple times. **When coupled with counsel for Darius Fisher's multiple requests for continuance**, the Court, at the time, had and continues to have grave concern as to whether counsel for Darius Fisher was attempting to force a continuance, or once the jury was empaneled, "goad a mistrial." Ultimately, however, it was the sudden and unexpected alleged mental condition of a co-defendant that precipitated the mistrial and thus, this Court did not then, nor must it now, make such a determination. However, the Court notes the delays precipitated by counsel for Darius Fisher were not irrelevant to the situation the government was forced into by Alexander's alleged mental condition.

The Court notes the mistrial in this matter was **by no means** caused by the government's "lack of preparedness" for trial, as alleged by Mr. McCorvey. [Doc. 440, p.7] Rather, the mistrial was seriously influenced by **the delay caused by Mr. McCorvey's multiple, untimely, and wholly unfounded allegations** regarding what the government had or had not provided in discovery, what the government had or had not stated at various conferences, along with Mr. McCorvey's failure to

---

intercept between the confidential informant and Joseph Helaire (a deceased co-conspirator) in lieu of live testimony. Thus, again counsel for Darius Fisher's allegations were unfounded.

14

review discovery materials provided to him almost one year prior to trial, Mr. McCorvey's refusal to stipulate to the testimony of the two chemists, and of course, ultimately, Mr. Alexander's purported mental health deterioration. All of these events led to a delay of the trial, first on September 28 (so that the Court could address Mr. McCorvey's unfounded allegations raised first at the pretrial conference), and then on October 1 (so that Mr. McCorvey would have additional time to review the "voluminous" new discovery, which was found, ultimately to have been neither voluminous nor new), and finally an additional delay on October 1, required (so that the Court could address how to proceed once Mr. Alexander exhibited competency issues, exacerbated by the delay caused by counsel for Darius Fisher having divested the government of its ability to have witnesses available at the now, yet again, delayed trial). Had counsel for Darius Fisher wished to avoid this result, his counsel could have agreed to stipulate to the chemists' reports. [*See also* Ct. Ex. D] This Court also notes, had Mr. McCorvey filed his motion for dismissal premised upon double jeopardy shortly after the mistrial was declared, rather than again, engaging in delay – this time almost six months post-trial, and only one and one-half months prior to the rescheduled trial date – Mr. McCorvey might have been in a stronger position. However, a review of the entire record reveals Mr. McCorvey has had a continuing pattern of being dilatory and not completely candid with the Court, which, as noted, has caused grave concern to this Court.

    For all of the foregoing reasons, and adopting herein the legal conclusions and findings of

fact contained in the Report and Recommendation[18], the Court DENIES the motion to dismiss.

THUS DONE AND SIGNED in Chambers, Lafayette, Louisiana this 30th day of April 2010.

*[signature]*
REBECCA F. DOHERTY
UNITED STATES DISTRICT JUDGE

---

[18]The Court additionally supplements the legal analysis contained in the Report and Recommendation by citation to (and reliance upon) *U.S. v. Banaum,* 887 F.2d 546 (5th Cir. 1989), which the Court finds to be one of the more factually similar cases to the case at hand.