RECEIVED
USDC, WESTERN DISTRICT OF LA
TONY R. MOORE, CLERK
DATE 05/06/10

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

LAFAYETTE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | CRIMINAL ACTION NO. 08-00205-01 |
| VERSUS | JUDGE DOHERTY |
| DARIUS NATHANIEL FISHER | MAGISTRATE JUDGE HILL |

### MEMORANDUM RULING

Currently pending before the Court is a "Motion to Stay Proceedings" [Doc. 458] filed by defendant, Darius Fisher. In the motion, defendant argues a stay of the trial, scheduled to commence on May 10, 2010, is necessary "in order to prevent the infringement upon the Defendant's double jeopardy right not to be tried pending an appeal [from this Court] from the denial of a Motion to Dismiss Indictment based on double jeopardy grounds." [Doc. 452-2, p.2] For the following reasons, the Court finds the motion to dismiss premised upon double jeopardy was FRIVOLOUS, and thus the motion to stay is DENIED.[1] United States v. Dunbar, 611 F.2d 985, 988 (5th Cir. 1980)(If the district court finds a claim of double jeopardy to be frivolous, "the filing of a notice of appeal by the defendant shall not divest the district court of jurisdiction over the case.")

As the facts and legal analysis concerning the merits of the motion to dismiss have previously been set forth in extensive detail, they will not be repeated here. Rather, the reader is referred to the Report and Recommendation of the Magistrate Judge [Doc. 440], as supplemented by this Court's

---

[1] At telephone conferences held on April 16, 2010 [Doc. 443] and April 28, 2010 [Doc. 462], the Court gave notice to all counsel that upon initial review, and in light of the impending trial date, counsel should not suspend trial preparation and should be fully prepared to go to trial as scheduled, should this Court deny Darius Fisher's request for a stay.

Judgment [Doc. 455], for a full recitation of the factual and procedural history of this matter as it pertains to the pending motion and those documents are adopted as if contained herein.

The Double Jeopardy Clause of the Fifth Amendment of the United States Constitution states: "[N]or shall any person be subject for the same offence to be twice put in jeopardy of life or limb." Jeopardy attaches when the jury is empaneled and sworn. Crist v. Bretz, 437 U.S. 28, 35 (1978). The double jeopardy clause protects a defendant's "valued right to have his trial completed by a particular tribunal." Crist v. Bretz, 437 U.S. 28, 36 (1978). "It also bars abusive governmental conduct designed to harass a defendant through repetitive prosecution or undertaken for the purpose of increasing the likelihood of conviction." United States v. Bauman, 887 F.2d 546, 549 (5th Cir. 1989)(citing Arizon v. Washington, 434 U.S. 497, 503-04 (1978)).

Beginning with United States v. Perez, 22 U.S. 579 (1824) the Supreme Court held under certain circumstances, the double jeopardy clause does not bar reprosecution of a criminal defendant, following a mistrial declared without his consent or over his objection. Perez recognized:

> [T]he law has invested Courts of justice with the authority to discharge a jury from giving any verdict, whenever, in their opinion, taking all the circumstances into consideration, there is a manifest necessity for the act, or the ends of public justice would otherwise be defeated. They are to exercise a sound discretion on the subject; and it is impossible to define all the circumstances, which would render it proper to interfere. To be sure, the power ought to be used with the greatest caution, under urgent circumstances. and for very plain and obvious causes.... But, after all, they have the right to order the discharge; and the security which the public have for the faithful, sound, and conscientious exercise of this discretion, rests, in this, as in other cases, upon the responsibility of the Judges, under their oaths of office.

Id. at 579.

In Wade v. Hunter, the Supreme Court expanded upon the circumstances giving rise to an exception to the double jeopardy rights afforded by the Constitution:

2

> The double-jeopardy provision of the Fifth Amendment, however, does not mean that every time a defendant is put to trial before a competent tribunal he is entitled to go free if the trial fails to end in a final judgment. Such a rule would create an insuperable obstacle to the administration of justice in many cases in which there is no semblance of the type of oppressive practices at which the double-jeopardy prohibition is aimed. ... What has been said is enough to show that a defendant's valued right to have his trial completed by a particular tribunal must in some instances be subordinated to the public's interest in fair trials designed to end in just judgments.

Id., 336 U.S. 684, 688-89 (1949); *see also* Arizona v. Washington, 434 U.S. 497, 505 & n. 16 (1978)("Because of the variety of circumstances that may make it necessary to discharge a jury before a trial is concluded, and because those circumstances do not invariably create unfairness to the accused, his valued right to have the trial concluded by a particular tribunal is sometimes subordinate to the public interest in affording the prosecutor one full and fair opportunity to present his evidence to an impartial jury.")(citing United States v. Jorn, 400 U.S. 470, 480 (1971)(A rigid application of the "particular tribunal" principle is unacceptable, because "a criminal trial is, even in the best of circumstances, a complicated affair to manage. . . . [It is] readily apparent that a mechanical rule prohibiting retrial whenever circumstances compel the discharge of a jury without the defendant's consent would be too high a price to pay for the added assurance of personal security and freedom from governmental harassment which such a mechanical rule would provide."))

As noted, the double jeopardy clause does not bar reprosecution of a criminal defendant following a *sua sponte* declaration of mistrial, over a defendant's objection, where there exists either "manifest necessity for the act, or the ends of public justice would otherwise be defeated." Perez, *supra*; *see also* United States v. Bauman, 887 F.2d 546, 549, 550, n.6 (5th Cir. 1989). This exception to the double jeopardy bar "frees the trial judge from the 'Hobson's choice' of either continuing with a trial that in fairness should be terminated, or declaring a mistrial after jeopardy attaches and

3

reprosecution is barred." Bauman at 549 (citations omitted). The Supreme Court has "declined to define manifest necessity or to enunciate rules of mechanical application." Bauman at 550 (citing Arizona at 505, n.16). Rather, the high court has "offered limited guidance, saying only that the 'high degree of necessity' mandated by the phrase can be found in a variety of circumstances." Id. (citing Arizona at 506-09). The Supreme court deliberately left the definition of the phrase ambiguous, thus providing the trial court with "considerable discretion to declare a mistrial without immunizing a defendant from reprosecution." Id.. As discussed in Bauman:

> The phrase 'manifest necessity," first used in double jeopardy jurisprudence in United States v. Perez ... has been judicially refined to such an extent that it is today somewhat misleading: It implies a greater burden on the government than is actually demanded to achieve a reprosecution after a mistrial. As the [Arizona v.] Washington Court noted, "Indeed, it is manifest that the key word 'necessity' cannot be interpreted literally; instead, contrary to the teaching of Webster, we assume that there are degrees of necessity and we require a 'high degree' before concluding that a mistrial is appropriate." 434 U.S. at 506.... Thus, manifest necessity, in modern legal jargon, is equivalent to "a high degree of necessity."

Id. at 551.

Finally, pursuant to Fifth Circuit jurisprudence, the standard of review of a trial court's declaration of a mistrial is as follows:

> In reviewing such an action by a state trial judge, we must accord "great deference" to the trial judge's " 'sound discretion' in declaring a mistrial." [Arizona] ... at 514. A trial judge has acted within his sound discretion in rejecting possible alternatives and in granting a mistrial, if reasonable judges could differ about the proper disposition, even though "(i)n a strict, literal sense, the mistrial (is) not 'necessary.'" Id. at 511.... This great deference means that the availability of another alternative does not without more render a mistrial order an abuse of sound discretion. Deference to the judge's sound discretion also precludes a reviewing court from assuming, in the absence of record evidence, that the trial judge deprived a defendant of constitutional rights or of federal statutory protections.

Cherry v. Director, State Bd. of Corrections, 635 F.2d 414, 418-19 (5th Cir. 1981) (citations and

footnotes omitted); *see also* Bauman at 549-50.

In the matter at hand, defendant Fisher and nine co-defendants were originally indicted for a variety of drug-related conspiracy and distribution charges on July 16, 2008.[2] Trial of this matter was set for September 28, 2009 - well in advance - to avoid scheduling conflicts, provide counsel with time to review discovery (including numerous audio recordings of wire intercepts) and prepare for trial (which was certified as complex). [*See* Docs. 57, 57-1, 65, 215] *See* Bauman at 547 ("The district judge decided to try all defendants together and set a trial date well in advance to avoid scheduling conflicts commonly associated with trying numerous co-defendants.")

As discussed in the Report and Recommendation and the court's Judgment on the merits of the motion to dismiss [Docs. 440, 455], ultimately, the trial in this matter was continued due to the competency issues of co-defendant Melvin Alexander, which neither the Court nor counsel became aware of until two days *after* the jury had been empaneled. However, compounding the difficulties in proceeding with the trial were late-raised motions, objections and unfounded allegations made by counsel for Darius Fisher, which led to multiple delays of the trial, seriously hampered the government's ability to prepare for trial, and contributed in large part to the ultimate unavailability of two government witnesses.[3] The Court considered all possible alternatives to declaring a mistrial [*see e.g.* Doc. 356], and intitally indicated it intended to sever Mr. Alexander from the other defendants. However, *all counsel*, including counsel for Darius Fisher, objected to a severance. It was not until after consulting with his client, that counsel for Mr. Fisher withdrew his objection and

---

[2]Mr. Fisher was not apprehended until September 8, 2008. [Doc. 96]

[3]As noted, a full recitation of the history is contained in this Court's supplement to the Magistrate's Report and Recommendation and the Magistrate Report and Recommendation – both of which are adopted as part of this ruling, and thus, will not be reiterated here.

5

asked that trial proceed as scheduled.[4] However, at that point, due to delays caused and anticipated by the competency issues of Mr. Alexander, and the multiple delays precipitated by counsel for Darius Fisher, two government witnesses were no longer available to testify live, and counsel for Darius Fisher refused to enter into a stipulation regarding their testimony.[5] As also noted in the Judgment:

> The Court ..., at the time of these events and now, continues to have grave concern as to the numerous times counsel for Darius Fisher made untimely and unfounded allegations, which forced delay of the trial and investigation and research by the government on the eve of trial, which interfered with the government's ability to prepare for trial, delayed the timely commencement of trial, and ultimately, forced the government to rearrange witness travel and availability multiple times. **When coupled with counsel for Darius Fisher's multiple requests for continuance**, the Court, at the time, had and continues to have grave concern as to whether counsel for Darius Fisher was attempting to force a continuance, or once the jury was empaneled, "goad a mistrial."

[Doc. 455, p. 14] *See also* Bauman at 548 ("Sensing bad faith, the district court interpreted ... [counsel's] actions as a calculated attempt to disrupt the trial.")

The Court was, thus, faced with a situation in which "the defendants offered the court no uniform curative measure for any prejudice which they may have suffered." Bauman at 548. Mr. Alexander had exhibited behavior likely mandating a full evaluation at a Bureau of Prisons' facility, and it was anticipated to take well over three months to complete that evaluation, as well as any

---

[4] As discussed in the Court's Judgment [Doc. 455], this was not in conformity with Mr. McCorvey's previous requests for a continuance or delay of the trial.

[5] In Bauman, the Fifth Circuit found the assertion of a double jeopardy defense by two of three defendants was "not meritless" (but was ultimately unsuccessful, as the appellate court found "a high degree of necessity existed for a complete mistrial") where the defendants had "consistently objected to a mistrial" and had "agreed to stipulate to certain government evidence in order to avoid a mistrial as to them." Id. at 551, 552. As discussed above, that is not what occurred in the case at bar.

independent evaluation his attorney wished to have done.[6] [Doc. 444, pp. 29-31] Thus, the trial of Melvin Alexander could not go forward; the jury had, at that point, been empaneled for over three days; all counsel objected to the Court's severance of Melvin Alexander; the government had moved for a continuance of the trial as to all defendants, with no objection from any defense counsel [Doc. 444, pp. 23-25]; yet Mr. McCorvey later *consulted with his client and changed his position* to object to the government's motion to continue [Doc. 444, p. 35] (despite having previously requested and implied, on multiple occasions, a continuance was necessary), and moved that Mr. Alexander be severed so that Mr. Fisher could proceed immediately to trial (even though two of the government's witnesses were no longer available to testify live, and Mr. Fisher would not stipulate to their testimony or the chain of custody).[7] Prior to declaring a mistrial, the Court provided all counsel with the opportunity to make any suggestions or objections and place any argument on the record they wished - only counsel for Darius Fisher objected.

Due to all of the foregoing, as well as for the reasons provided in the Report and Recommendation as supplemented by this Court within the Judgment [Docs. 440, 455], this Court concluded, and still concludes, there was "a high degree of necessity" for the mistrial declared in this matter, that the stated policy concerns underlying declaration of mistrials were met, and accordingly,

---

[6]Additionally, on October 1, 2010, in light of the notice provided by the Court the previous afternoon regarding Mr. Alexander, the government filed a "Motion for Pre-Trial Psychiatric Examination for Determination of the Existence of Insanity at the Time of the Offense and to Determine Whether the Defendant is Competent to Stand Trial." [Doc. 353] In an effort to salvage the trial, the Court requested the Magistrate Judge conduct a preliminary review of the evidence then at hand regarding Mr. Alexander's competency to proceed to trial. The same day, the Magistrate Judge concluded, after review, that a full evaluation was required in order to determine Mr. Alexander's competency. [Docs. 354 and 444 at p.49]

[7]A continuance was not a viable option. Due to counsels' calendars and the need for an evaluation of Melvin Alexander, trial was rescheduled for May 10, 2010.

a mistrial was declared. Thereafter, Darius Fisher filed a motion to dismiss arguing double jeopardy. Again, for the reasons noted and the *clear absence of the underlying policy considerations supporting the prohibition against double jeopardy,* this Court DENIED that motion. This Court, at this time, after full review of the merits of the motion to dismiss, all policy considerations as delineated by the United States Supreme Court and the United States Fifth Circuit, determines no stay shall issue by this Court[8], that this Court retains jurisdiction notwithstanding defendant's notice of appeal, and that the public interest in the administration of justice through a trial on the merits should prevail, as this Court finds the motion to dismiss to be frivolous, after analysis of the applicable law. Accordingly, the motion to stay [Doc. 458] is DENIED.

THUS DONE AND SIGNED in Chambers, Lafayette, Louisiana this 6th day of May, 2010.

_____
REBECCA F. DOHERTY
UNITED STATES DISTRICT JUDGE

---

[8]Of course, Mr. Fisher may ask the Fifth Circuit to stay the pending trial.